HONORABLE RICARDO MARTINEZ
TRIAL: 5/26/21

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

CARTER JESNESS, a single man,

    Plaintiff,

v.

GREGORY LYLE BRIDGES,

    Defendants.

No.   2:18-cv-1225

PLAINTIFF'S TRIAL BRIEF

## I.   NATURE OF CASE

This case is brought as a statutory cause of action pursuant to 18 U. S. C. 2255 (a). The statute provides, *inter alia*, that any person who, while a minor, was a victim of a violation of 18 U. S. C. 2423 may sue in any appropriate United States District Court and shall recover the actual damages such person sustains and the cost of the suit, including a reasonable attorney's fee.

Defendant Bridges was charged in this Court under cause number CR–181MJP with two counts of violations of 18 U.S.C. 2423 (b) interstate travel with intent to engage sexual act with a minor. These charges arose out of conduct occurring between December 1, 2012 at which time plaintiff was 14 years old and June 1, 2015. During this defendant groomed, persuaded, induced and enticed plaintiff to engage in sexual activity with him. The specific charges against defendant in which Plaintiff was the victim involved interstate travel on or about April 5, 2013 and on or about April 26,

PLAINTIFF'S TRIAL BRIEF- 1

**Leemon** 403 Columbia St. Ste. 500 Seattle, WA 98104
**+ Royer** *Phone* 206 269-1100 *Fax* 206 269-7424
PLLC

2013. On these occasions defendant, who resided in Seattle traveled from Seattle to plaintiff's place of residence in Boulder, Colorado, where he took plaintiff to a hotel and spent the weekend with him, engaging him in sexual activity. Defendan pleaded guilty to the two counts involving Plaintiff and a third involving possession of child pornography was was sentenced on September 1, 2016 by Hon. Marsha Pechman to 120 months in prison.

Plaintiff moved for summary judgment herein, arguing that the Defendant's conviction was conclusive on the question of whether Plaintiff was a victim of violations of 18 U. S. C. 2423. The court agreed and entered a partial summary judgment herein on October 28, 2019. Document 31. Accordingly, the only question remaining for trial is the "actual damages" suffered by plaintiff.

## II. PLAINTIFF'S BACKGROUND AND EXPECTED EVIDENCE

Plaintiff Carter Jesness is a 22-year-old man born in Colorado in June, 1998. The evidence will show that he had a chaotic and lonely childhood. His father was the third of his mother's eight marriages to date. He had two older sisters each of whom had different fathers. Although Carter's father lived with the family for a few years, his mother left with her children when Carter was still quite young. Carter has had only limited and infrequent contact with him since.

Carter's mother got married for a fourth time while he was in grade school the "couple of years" that they lived with this husband was about the only stable family life he experienced as a young child. However eventually his mother left that marriage, telling the children only, "we're leaving." At that point Carter's mother engaged in an unstable existence including one boyfriend after another and frequent moves of their residence. As a result Carter attended eight different elementary schools. With the frequent change of schools, Carter naturally was unable to make any lasting friendships.

In addition, his home life was sad and empty. Although his mother was mostly employed, she frequently stayed away from the home for days on end, leaving Carter to fend for himself in a home where often there was not sufficient food. Moreover, one of his older sisters is mentally ill and was in and out of the home for periods of residential treatment. When she was home she was threatening to Carter to the degree that CPS got involved when he was about 11 years old out of concern for her well-being and his.

During middle school Carter lived with his maternal grandmother off and on, finally moving in permanently with her and his stepgrandfather and enrolling in a second middle school. As Carter approached high school at the age of 14 he recognized that he was gay. He lived outside of Fort Collins, Colorado ("redneck territory") and his his sexual orientation resulted in bullying and name-calling.

Carter was in this intensely lonely situation when he encountered the defendant online in a chat room.  Their first communication was early in 2013, when Carter was a 14-year-old high school freshman. The details of the criminal offenses that followed are set out in Exhibit 1 hereto, excerpts of the Department of Homeland Security investigation. Bridges and Carter met in person three times, the first being early April 2013, the second about a month later and the third in the summer of 2014. Bridges was arrested in August 2014 initially on child pornography charges. Carter was identified from this investigation. Notwithstanding the ongoing investigation, Bridges remained in touch with Carter until shortly before Carter's testimony before a grand jury in Seattle in October 2015.

### III.  EXPECTED LEGAL ISSUES

The Court has directed the parties' attention to the elements of damages available pursuant to statute. The statute itself describes the available damages as follows:

> [T]he actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred. The court may also award punitive damages and such other preliminary and equitable relief as the court determines to be appropriate.

18 U.S.C.A. § 2255 (West).

As the United States Supreme Court has held, the term "actual damages" can have different meanings depending on the context. *F.A.A. v. Cooper*, 566 U.S. 284, 292, 132 S. Ct. 1441, 1449, 182 L. Ed. 2d 497 (2012). In in statutes prohibiting discrimination, for example involving directly damages which naturally include humiliation and emotional harm, courts have construed the statutory term "actual damages" to include compensation for mental and emotional distress.

> Take, for instance, some courts' interpretations of the Fair Housing Act (FHA), 42 U.S.C. § 3613(c), and the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681n, 1681o. A number of courts have construed "actual" damages in the remedial provisions of both statutes to include compensation for mental and emotional distress. See, e.g., *Seaton v. Sky Realty Co.*, 491 F.2d 634, 636–638 (C.A.7 1974) (authorizing compensatory damages under the FHA, 42 U.S.C. § 3612, the predecessor to § 3613, for humiliation); *Steele v. Title Realty Co.,* 478 F.2d 380, 384 (C.A.10 1973) (stating that damages under the FHA "are not limited to out-of-pocket losses but may include an award for emotional distress and humiliation"); *Thompson v. San Antonio Retail Merchants Assn.*, 682 F.2d 509, 513–514 (C.A.5 1982) (per *293 curiam) (explaining that, "[e]ven when there are no out-of-pocket expenses, humiliation and mental distress do constitute recoverable elements of damage" under the FCRA); *Millstone v. O'Hanlon Reports, Inc.*, 528 F.2d 829, 834–835 (C.A.8 1976) (approving an award of damages under the FCRA for "loss of sleep, nervousness, frustration and mental anguish").

F.A.A. v. Cooper, 566 U.S. 284, 292–93, 132 S. Ct. 1441, 1449, 182 L. Ed. 2d 497 (2012).

PLAINTIFF'S TRIAL BRIEF- 4

**Leemon**   403 Columbia St. Ste. 500 Seattle, WA 98104
**+ Royer**   *Phone* 206 269-1100  *Fax* 206 269-7424
PLLC

Likewise, under Washington law emotional distress damages are available upon proof of an intentional tort, whether the distress is severe or not. *Nord v. Shoreline Sav. Ass'n*, 116 Wash. 2d 477, 484, 805 P.2d 800, 804 (1991). By the very nature of the statute under which this claim is brought, damages are much more likely to be in the nature of general damages than out-of-pocket pecuniary loss. For example, 18 U. S. C. 2255 established causes of action not only for victims of sexual abuse, but for victims of child pornography.   The intent of Congress clearly requires allowing damages for mental and emotional distress in cases such as this.

### IV. DAMAGES

The evidence with regard to damages will be by testimony from the plaintiff. The harm caused by the defendant herein is, as is usual in cases of child sexual abuse, extreme and long-lasting. The process of grooming itself sets the victim up for this kind of harm. Here, plaintiff was clearly a lonely boy looking for someone who cared about him. The defendant, by showing an interest in him and pretending to have feelings for him played on his vulnerability and neediness. The discovery of how he (among others) was manipulated left him angry, humiliated, ashamed, depressed and anxious. It further exacerbated his already low self-esteem. He has several times attempted self-harm and has fought frankly suicidal impulses. He is currently taking medication both for depression and anxiety.

The "relationship" with Bridges was Plaintiff's first romantic relationship. As plaintiff has found in subsequent attempts at same-age relationships, he has serious issues with trust which create extreme impediments to closeness.

This kind of predatory injury is never forgotten. Plaintiff urges the court that a judgment of at least $500,000 is completely within the evidence will that will be presented. In any event,

PLAINTIFF'S TRIAL BRIEF- 5

**Leemon**   403 Columbia St. Ste. 500 Seattle, WA 98104
**+ Royer**   *Phone* 206 269-1100  *Fax* 206 269-7424
PLLC

the statute itself provides for a minimum presumptive award of $150,000. See, *Prewett v. Weems,* 749 F.3d 454, 459 (6th Cir. 2014).

DATED this 12th day of May, 2021.

```
                              /s Mark Leemon_____
                              Mark Leemon, WSBA #5005
                              Attorney for Plaintiff
```

**CERTIFICATE OF SERVICE**

I hereby certify that I caused to be electronically filed the foregoing document with the Clerk of the Court and served Defendant via USPS.

>   Gregory Bridges
>   44994-086
>   MCFP Springfield
>   1900 W. Sunshine St.
>   Springfield, MO 65807

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

>   DATE:   May 12, 2021.

>                           *Diane Oggoian*
>                           Diane Oggoian, Paralegal