In The United States District Court
Western District of Washington

| | |
|---|---|
| Carter Jesness,<br>Plaintiff,<br>v.<br>Gregory Lyle Bridges,<br>Defendant | No. 2:18-cv-1225 RSM<br><br>Defendant's Objection<br>To Plaintiff's Motion for<br>Summary Judgment |

I, Gregory Lyle Bridges, Defendant Pro Se, object to Plaintiff's motion for summary judgment based on the following:

I. This case is one of first impression; 18 U.S.C. 2255 has never been adjudicated by the single triggering event of §2423(b).

II. The details and facts of this case fall outside of the intent and purpose of those used to create §2255, and

III. Summary Judgment in this case would be inconsistent with the severity of damages that substantiated summary judgment in all other §2255 cases.

## I. Case of First Impression Requires High Scrutiny

This case will set a precedent. Never in the history of 18 U.S.C. 2255 has a case been adjudicated where 18 U.S.C. 2423(b) is the single triggering event. All §2255 cases have revolved around sexual abuse and exploitation in the production of child pornography and child prostitution. Counsel for the Plaintiff cites <u>Prewett v. Weems</u>, 749 F.3d 454 (6th Cir. 2014) to support summary judgment, a case involving the use of prostitutes to lure a teenager into sexual activities that were videotaped. In 2017, this court awarded summary judgment in <u>Aurora v. Sheely</u>, 2017 US Dist Lexis 73042 (9th Cir. 2017), a case involving the production of child pornography through the repeated sexual abuse of a 4-5-year-old girl by her father. Masha Allen, the namesake of §2255, was adopted from Russia at age five and for the next five years, was sexually abused by her adoptive father who created and distributed video-recordings of the abuse. The current case shares nothing in common with any adjudicated §2255 case. The extreme differences between the facts and details of this case and all other §2255 cases demand higher scrutiny than a summary judgment would provide. The creation of a well-founded precedent demands a higher level of scrutiny than a summary judgment would provide.

## II. Facts of the Case Fall Outside the Scope of Intent of §2255

In 2013, Plaintiff and Defendant met on <u>Jack'd</u>, a gay dating application for smartphones. A relationship began. In mid- and late-April 2013, Defendant traveled to Colorado to see Plaintiff, who was nine weeks shy of his 15th birthday. In July of 2014, Defendant traveled to Colorado again to see Plaintiff who was

then 16. Over the course of these three visits, the relationship grew to include sex. The relationship continued until Defendant was ordered to cease all direct and indirect communication with the Plaintiff by the court in late-May of 2015. As stated by the Plaintiff in the HSI interviews,[1] and as testified to the Grand Jury,[2] he was not a victim of any scheme to create pornography, he was not a victim of any type of sexual quid-pro-quo, nor was he a victim of any threats, use of force, or intimidation.

Congress enacted §2255 as "an attempt to address the 'multi-million-dollar' child-exploitation industry, along with the 'physiological, psychological, and emotional harm caused by the production, distribution, and display of child pornography' and the 'lack [of] effective remedies under federal law' available to 'exploitation victims.'" Stephens v. Clash, 796 F.3d 281, 285 (3rd Cir. 2015), citing Pub. L. No. 99-500, §702(1)-(3), 100 Stat. 1783 (1986). "The legislative history of Masha's Law shows that it was intended to provide a cause of action for victims of internet distribution of child pornography." St. Louis v. Perlitz, 176 F. Supp. 3d 97 (2nd Cir. 2016). This powerful statute creates a strict liability for violation of any one of the fourteen enumerated statutes ranging from peonage, forced labor, sex trafficking, selling and buying children for sexual purposes, and the inducement and transportation of minors for the production of pornography. These statutes, taken in multiple varying combinations, create an exploitation scheme: leveraging a weakness or disadvantage to the detriment of one party to advance the interest or benefit of another party.

It's reasonable that Congress included §2423 - 'Transportation of Minors' in §2255's scope. The name alone implies illicit trafficking. Four of the five subsections in §2423 contain elements of trespass, assault, and exploitation. 2423(a) requires a trespass: the physical

---

[1] Reference attachment to Plaintiff's Trial Brief

[2] See excerpt of Grand Jury Testimony, Exhibit A-1, pg 1 lines 7-12, 20-23 and pg 2 lines 17-19, attached

movement of a minor for use in prostitution or illicit sexual activity. 2423(c) requires an assault: the engagement in a prohibited sexual activity in a foreign place. 2423(d-e) both require execution of an exploitation plan. These in themselves are direct exploitations or leverage existing exploitation schemes. 2423(b), however, does not contain any element of trespass, assault, or exploitation. It does not contain a lesser offense and does not afford the automatic attachment of any chapter 109A offense. A conviction under 2423(b) does not preclude a defendant from disputing that illicit contact occurred: United States v. Tykarsky, 446 F.3d 458, 469 (3rd Cir. 2006), United States v. Hersh, 297 F.3d 1233, 1245-46 (11th Cir. 2002), and Doe v. Schneider, 2013 US Dist Lexis 140274 (3rd Cir. 2003).

2423(b) alone is the most subjective of the §2423 group. It is an outlier in the §2255 aggregate. It neither creates nor implies an exploitation scheme on its own accord. 2423(b) is a measure of intent, a measure of motivation; a measure of nuance. Details and facts are critical and must be weighed to measure the severity and remedy. These critical elements would be lost in the generalized outcome a summary judgment produces. The creation of precedence and the interest of justice deserve attention to detail.

III. Summary Judgment would Produce Inconsistency

§2255's remedy for exploitation is a minimum damage guarantee of $150K. The point of this minimum damage value "is to allow victims of child pornography to recover", Doe v. Bruno, 2017 US Dist Lexis 60242 (2nd Cir. 2017). Congress concluded "that children depicted in

pornography "are seriously injured and deserve a high threshold amount of damages." Doe v. Boland, 698 F.3d 877, 882 (6th Cir. 2012). The value of $150K was deemed appropriate as it reflects an amount aligned with multiple medical expert testimonies to damages that will be experienced as a result of childhood sexual exploitation. An example of this is found in United States v. Baker, 672 F.Supp.2d 771 (5th Cir. 2009) where two boys, ages four and five, and an infant girl were photographed in sexual activities with their father. Dr. Ronald Jereb calculated medical and mental treatment costs of $97,900 for each child. The court weighed the details and facts of the case to award a final amount of $154K to each child. The court relied on the language in § to validate this amount. Likewise, all adjudicated §2255 cases have relied on the rationale that a child used against their will or realization to create child pornography will require medical and psychological treatments through a majority of their lives. The $150K remedy is to provide for and supplement such needs. The repeated theme that creates such needs: production of child pornography through sexual exploitation, a theme that is absent in the current case.

    While an absolute interpretation of §2255 creates a strict liability of $150K in the current case, such an interpretation dilutes the severity of actions and discounts the damages suffered by Aurora in Sheely, and the plaintiff's of all other adjudicated §2255 cases.[3] The current case is radically different and should not be forcibly assimilated into the common theme. The Hon. Judge Ishii was correct in reasoning that "the broad range of crimes for which $150,000 is the deemed damages lends support to a finding

---

[3] I.E: Doe v. Bruno, US Dist Lexis 60242 (2nd Cir. 2017); Gusen v. Bianci, 192 F.Supp.3d 580 (3rd Cir. 2016); Doe v. Bollaert, 2014 US Dist Lexis 38113, (6th Cir. 2004); Larsen v. Larsen, 2012 US Dist Lexis 34179 (8th Cir. 2012); N.S. v. Rockett, 2017 US Dist Lexis 54204 (9th Cir. 2017)

that a defendant who possessed child pornography caused the victim less than $150,000 in harm." United States v. Mather, 2010 US Dist Lexis 136783 (9th Cir. 2010). Though the context was in figuring restitution, the case involved an enumerated statute of §2255. Judge Ishii did not interpret the statute absolutely. The details and facts of his case were different from §2255's theme. The same reasoning applies in the current case: 2423(b) with the details and facts don't justify a remedy in the amount of $150K.

## IV. Conclusion

This case is one of first impression. A precedent will be set in the measure of damages caused by the 25-month relationship between a homosexual teenager and a homosexual adult who met via a gay-dating application, dated, and became intimate. These damages have a prescribed amount of $150K, based on remedies for victims of child pornography and childhood sexual exploitation. Summary judgment would award that amount and impose that theme. That would be an error. Summary judgment would create an inconsistency in case history because there was no scheme to produce child pornography or sexually exploit a child in this case. The chasm between the facts of this case and §2255's intent can only be bridged by a high level of scrutiny. Defendant prays the court will not grant summary judgment.

Dated this 4th day of June, 2021

Gregory Lyle Bridges, Defendant Pro Se

```
 1    Q.   Was oral sex involved?
 2    A.   Yes.
 3    Q.   And just one time or two times or a bunch of
 4  times?
 5    A.   I'm not sure.
 6    Q.   You're not sure.
 7         During any of those interactions that weekend
 8  with Mr. Bridges, did he threaten you or physically
 9  harm you --
10    A.   No.
11    Q.   -- in an abusive way?
12    A.   No.
13    Q.   And at that point in time did you have
14  romantic feelings still towards Mr. Bridges?
15    A.   Yes.
16    Q.   Did you tell Mr. Bridges that you loved him?
17    A.   Yes.
18    Q.   Did Mr. Bridges tell you that he loved you?
19    A.   Yes.
20    Q.   And during that interaction did he take any
21  video or photographs of the two of you in intimate
22  interactions?
23    A.   No.
24    Q.   No.  Okay.
25         So at the end of May 2013 you were how old?
```

```
 1       Q.   And what did you guys do for activities
 2   that -- like, fun activities that trip of July 2014?
 3       A.   Water World, movies, dinner.
 4       Q.   Who paid for everything?
 5       A.   Him.
 6       Q.   And did you guys have sexual interactions on
 7   that trip?
 8       A.   Yes.
 9       Q.   Okay.  And did you have anal sex with
10   Mr. Bridges?
11       A.   Yes.
12       Q.   And did you have oral sex with Mr. Bridges?
13       A.   Yes.
14       Q.   One time, two times, or a handful of times?
15       A.   I'm not sure.
16       Q.   You're not sure.
17            Again, was Mr. Bridges physically abusive to
18   you during that timeframe?
19       A.   No.
20       Q.   Okay.  There had been a gap between, you
21   know, May of 2013 and July of 2014.  Do you know why
22   you guys didn't see each other for approximately a
23   year?
24       A.   Because I stopped talking to him.
25       Q.   And why did you stop talking to him?
```

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT THIS OBJECTION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT HAS BEEN MAILED, VIA USPS, THROUGH THE PRISON MAILROOM AT MCFP SPRINGFIELD ON JUNE 8, 2021 TO THE CLERK OF THE COURT, AND COUNSEL FOR THE PLAINTIFF:

MARK LEEMON
403 COLUMBIA ST.
STE. 500
SEATTLE, WA 98104

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THIS IS TRUE.

DATED: 6.8.2021

GREGORY LYLE BRIDGES, DEFENDANT PRO SE

GREGORY BRIDGES
#44994-086
MEDICAL CENTER for FEDERAL PRISONERS
P.O. Box 4000
SPRINGFIELD, MO 65801

CLERK, UNITED STATES DISTRICT COURT
UNITED STATES COURTHOUSE
700 STEWART STREET
SUITE 2310
SEATTLE, WA 98101



FILED
LODGED
RECEIVED

JUN 11 2021

CLERK U.S. DISTRICT COURT
AT SEATTLE
WESTERN DISTRICT OF WASHINGTON
BY                         DEPUTY

MAIL



Springfield FDPC MO 658
TUE 08 JUN 2021 PM